UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TROY EVERSON

VERSUS

TALMADGE BUNCH, ET AL.

CIVIL ACTION

14-583-SDD-EWD

**REASONS AND ORDER OF APPROVAL OF CLASS SETTLEMENT**

In this Class Action, the following Motions are before the Court: *Joint Motion for Final Approval of Class Action Settlement;*[1] *Motion for Attorney Fees (Application) on Behalf of Class Counsel;*[2] *Unopposed Motion for Reimbursement of Class Counsel Expenses;*[3] and *Consent Motion for Appointment of a Court Appointed Disbursement Agent.*[4] Hearing on the Motions was held on April 21, 2016. After considering the requirements of law and applicable jurisprudence, the evidence and submissions of the Parties, the representations of the Parties, the Settlement Agreement, the settlement related pleadings and the record of these proceedings, for the reasons orally assigned on April 21, 2016, and for the following assigned reasons, the Class Settlement shall be approved.

---

[1] Rec. Doc. 60.
[2] Rec. Doc. 54.
[3] Rec. Doc. 62.
[4] Rec. Doc. 63.

DM 31915              1

Relevant Factual and Procedural History

On September 16, 2014, Troy Everson ("Everson" or "Plaintiff" or "Class Representative"), a former prisoner who had been housed in the East Feliciana Work Release Facility ("Facility") in Clinton, Louisiana, from February 2012 until April 2014, brought a class action *Complaint*[5] against Sheriff Bunch[6] asserting constitutional violations under the 8th and 14th Amendment arising out of alleged inhumane conditions of the Facility. The Class Representatives[7] allege that the dangerously unhealthy conditions of the Facility caused inmate residents to suffer severe health effects due to exposure to "multiple species of toxic mold," mildew, other contaminants, as well as vermin, insects, and their excrement.[8] The *Complaint*, alleges that Sheriff Bunch was deliberately indifferent to the conditions of the Facility and failed to take reasonable measures to remedy the unsanitary harmful conditions. Everson sought declaratory and injunctive relief. Plaintiff exhausted all required administrative remedies under the Administrative Remedy Procedure.[9] On September 9, 2015, and upon motion of the Parties, the Court converted a hearing on Plaintiff's motion to certify a class a class into a hearing on the *Joint Motion for Preliminary Approval of Class Action Settlement.*

---

[5] Rec. Doc. 1.
[6] Plaintiff had originally named Officers Gerald Starks and Curtis "Pete" Fremin, Jr. as Defendants but subsequently moved for their voluntary dismissal without prejudice. (Rec. Doc. 15). The Court granted Plaintiff's motion on January 16, 2015. (Rec. Doc. 18). During the interim of this lawsuit, Sheriff Talmadge Bunch lost reelection as Sheriff and is no longer serving in that capacity.
[7] Troy Everson and Louis Howard.
[8] Rec. Doc. 1, pp. 3-4, ¶¶9, 13.
[9] Rec. Doc. 1, p. 2, ¶7.

The Court granted preliminary approval of the Settlement of this matter on September 9, 2015 and set the matter for a Fairness Hearing on February 25, 2016. The Court ordered the Parties to submit a proposed notice and notice plan for approval within 10 days of the Fairness Hearing and notify the Court of any objections to the proposed Settlement 20 days prior to the Fairness Hearing. The Court convened the Fairness Hearing as scheduled but deferred the taking of evidence until April 21, 2016, at which time the Court conducted proceedings to determine whether the Settlement Agreement[10] is "fair, reasonable, adequate and in the best interest of the class" pursuant to Federal Rule of Civil Procedure 23 and applicable law. Also, insofar as the settlement involves a public body and public money, the Court has considered the fairness of the Settlement relative to the expenditure of public funds.

**The Court makes the following Findings of Fact and Conclusions of Law and ORDERS:**

<u>Settlement Class Certification</u>

1. Rule 23(a) of the Federal Rules of Civil Procedure provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the

---

[10] Rec. Doc. 56-1.

    claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(b)(3) requires that "the court find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

2. The Class Definition approved and adopted by the Court properly identifies those entitled to relief, those bound by the judgment, and those entitled to notice. The Court finds that membership in the class is clearly ascertainable. Therefore, a class defined as follows is certified:

> "Class" shall mean "all persons who in the period of September 15, 2013 through September 9, 2015 were housed in the East Feliciana Work Release Facility."

3. To demonstrate numerosity sufficient to support the certification of a Rule 23(b) class, the proponents must establish that "the class is so numerous that joinder of all members is impracticable."[11] Although the number of members in a proposed class is not determinative of whether joinder is impracticable, it has been noted that any class consisting of more than 40 members "should raise a presumption that joinder is impracticable."[12] In the present action, 439 letters were mailed to potential class members. As of

---

[11] Fed.R.Civ.P. 23(a)(1).
[12] *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)(citing 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions §3.05 (3d ed. 1992)).

February 15, 2016, 193 claim forms had been received by class counsel, representing 44% of the total notices sent. Considering the number of claimants, the Court finds that the Rule 23(a) numerosity requirement has been satisfied.

4. Rule 23(a)(2) requires for class certification that the action consist of questions of law or fact common to the class. "[T]he threshold for commonality is not high."[13] "Even a single common question of law or fact can suffice."[14] This case involves claims arising under the 8th Amendment of the United States Constitution for cruel and unusual conditions of confinement due to alleged deliberate indifference of the past/former Sheriff. In the present action, the factual and legal issues relating to the conditions of the confinement and Sheriff Bunch's conduct are common to the class. Additionally, issues concerning causation of damages and liability are likewise common to the class. Therefore, the "low threshold" of the commonality requirement is satisfied in this case.

5. Rule 23(a) requires that "claims or defense of the representative parties [be] typical of the claims or defenses of the class." In other words, the Court must determine "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and

---

[13] *Simms v. Jones*, 296 F.R.D. 485 (N.D.Tex. July 9, 2013)(citing *Jenkins v. Raymark Industries*, 782 F.2d 468, 472 (5th Cir. 1986)).
[14] *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2546, 2556 (2011)).

adequately protected in their absence."[15] The test focuses on "the general similarity of the legal and remedial theories behind plaintiffs' claims." In this case, the circumstances surrounding Sheriff Bunch's conduct, liability, and defenses, as well as the legal theory upon which Sheriff Bunch's liability is predicated, are essentially the same with respect to the two named class representatives and the remaining class members. There will be some similarity in the harm or damages sustained by each class member. Therefore, the typicality requirement is satisfied here.

6. The adequacy of representation factor requires that the Court consider whether the representative parties will "fairly and adequately protect the interests of the class."[16] The purpose of this inquiry is "to uncover conflicts of interest between named parties and the class they seek to represent."[17] Here, the interest of the representative parties appears to be in alignment with the interests of the class considering the class members will raise identical 8th Amendment deliberate indifference claims arising out of their confinement at the East Feliciana Work Release Facility. An *Affidavit* submitted by counsel for Defendant Bunch reflects that "class counsel demonstrated themselves to be resourceful, innovative, diligent,

---

[15] *Wal-Mart Stores, Inc.*, 131 S.Ct. at n. 5.
[16] Fed. R. Civ. P. 23(a)(4).
[17] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)(citing *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157-58 n. 13 (1982)).

professional, hard-working, and highly competent—both as pertains to the litigation and to confecting a settlement under the circumstances."[18]

7. "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."[19] Initially, "the Court must identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether the issues are common to the class."[20] The substantive issues that will control in this case are whether the living conditions of the Facility are unconstitutional per the 8th amendment, and, if so, were the unconstitutional conditions responsible for the individual class member's health ailments. Here, the same substantive law, the 8th amendment and the deliberate indifference liability standard of a prison official will apply to all of the claims.[21] The evidence offered shows that the causation of injury factor and damages will be common to the class.[22] Hence, the Court finds that the predominance factor has been satisfied.

8. Rule 23(b)(3) requires that a court make a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the

---

[18] Rec. Doc. 58-13 (Affidavit of William F. Dodd, counsel for Defendant).
[19] *Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S.Ct. 1184, 1191 (2013).
[20] *Haley v. Merial, Ltd.*, 292 F.R.D. 339, 353 (N.D. Miss. 2013).
[21] In a suit against a prison official for a violation of an Eighth Amendment right relating to an inmate's conditions of confinement, the following two elements must be me: (1) the prison official's act or omission must be objectively serious, in that it "result[s] in the denial of the minimal civilized measure of life's necessities" and (2) the "prison official must have a sufficiently culpable state of mind," meaning that the official was "deliberate[ly] indifferen[t] to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).
[22] Rec. Doc. 56-10 (Affidavit of Brent Driskill); Rec. Doc. 56-11 (Affidavit of Dr. Rathbone).

controversy." In determining whether the superiority requirement has been satisfied, the Court may consider the following four factors: the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action.[23] The fourth factor, or the likely difficulties in managing a class action, may be disregarded in a proposed settlement-only class.[24] Because each of the class members in this case were allegedly harmed by a common condition and will rely upon the same legal theories, certifying the case as a class action is the superior and most efficient means of resolving the claims.

9. In sum, the Court finds that the proposed class meets the Rule 23 requirements for certification as a settlement-only class action. The Court adopts its prior *Order* granting the *Joint Motion for Preliminary Approval of Class Action Settlement*.[25]

---

[23] Rule 23(b)(3).
[24] *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1060 (S.D.Tex. Mar. 20, 2012)("Under *Amchem*, this fourth factor [likely difficulties in managing a class action] may be disregarded in a proposed settlement-only class.").
[25] Minute Entry from September 9, 2015 reflects that the Court approved the *Joint Motion for Preliminary Approval of Class Action Settlement*. (Rec. Doc. 36).

DM 31915     8

Notice

10. The Notice provided to the Class complies with this Court's *Orders*, both as to form and content, and was exemplary in its reach and effectiveness, as evidenced by 99% reach and the number of Proof of Claim Forms submitted as of this date. In particular, the notice sent to class members (1) informed the class members of the nature of the action and the general terms of the settlement; (2) provided several addresses of Plaintiff's class counsel where class members could write to review the settlement agreement, obtain a claim form, and request additional information; (3) provided the street address and location of the East Feliciana Work Release Facility where class members could also obtain the Settlement Agreement, Notice, and Proof of Claim Form; (4) contained the date, time, and place of the final fairness hearing; and (5) contained information regarding class members' ability to "opt-out" of or to object to the Settlement. The Court finds that the Notice complies with and satisfies the requirements of Rule 23 and Due Process.

11. The single "objection" made to (or more aptly, the inquiry raised about) the proposed Settlement Agreement was withdrawn, such that there are no objections to the Settlement.

Fairness of the Settlement

12. A class action may not be dismissed or compromised without the approval of the Court.[26] Before the Court approves a settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate."[27] The Fifth Circuit has identified six factors, known as the *Reed* factors, that the Court should consider in assessing whether a settlement is fair, reasonable, and adequate: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members.[28]

13. For the purpose of approval of the Settlement, Class Counsel, acting in accordance with this Court's *Orders*, have sufficiently protected the interests of the Class.

14. Per the submissions of all counsel, the Settlement Agreement was the result of extensive and intensive arms-length negotiations among highly experienced counsel, with full knowledge of the risks inherent in this litigation, and the representations of these officers of the Court verify that

---

[26] Fed. R. Civ. P. 23(e).
[27] Fed. R. Civ. P. 23(e)(2).
[28] *Reed. v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

the Settlement Agreement was entered into in good faith, at arms-length, and without collusion.

15. The Settlement Agreement is "fair, reasonable, and adequate for the Class" and is in the best interest of the Class in light, *inter alia*, of the complexity, expense and likely duration of this litigation, and the risks involved in establishing liability, legal causation and damages; the absence of insurance coverage; the benefit to the Class of a prompt correction of conditions; and the difficulty of collecting any judgment. Insofar as the settlement involves a public entity and public funds, the Court further finds that the Settlement is fair and reasonable for the Defendant public entity.

16. With respect to the request for service awards to the original Plaintiff/Class Representative Troy Everson and Class Representative Louis Howard, the Court finds as follows:

    A. As supported by the submissions, the Court finds that Mr. Everson and Mr. Howard rendered service beneficial to the Class at some personal expense and inconvenience.

    B. That Mr. Everson and Mr. Howard placed the welfare of the Class ahead of their own interests; and

    C. That they collectively expended considerable effort assisting counsel in the development of the case, case preparation, responding to discovery, involvement in the settlement process, appearing in court, and otherwise assisting Class Counsel.

The Court hereby ORDERS that the following service awards be paid by the Defendant within 30 days of the entry of this *Order*, from funds separate and apart from the Settlement Funds, in the following amounts:

      Class Representative Troy Everson $10,000.00; and

      Class Representative Louis Howard $10,000.00.

17. The Court conducted an *in camera* review of time and billing records of Class Counsel and finds that Class Counsel expended a substantial amount of time and effort in the development of the case, pleadings, fact discovery, consultation with experts of various disciplines; collection and review of environmental testing reports and data, collection and review of medical records of Class members; preparation of and dissemination of Notice to the prospective Class; management of Class demographic data and medical records; preparation for and attendance at Court ordered conferences and hearings; extensive meetings and negotiations with Defendants and defense counsel; site visits to the Facility; review and analysis of public records and financial information relative to the Defendants limited resources available to resolve and address the alleged conditions at the Facility and to provide reasonable and necessary medical care to the Class. Considering this evidence, and considering the results achieved for the benefit of the Class, the Court finds that a fee award is just and appropriate. The Court has considered the limited financial resources of the Parish and the Court is mindful that public funds will be used to ameliorate the harmful and unsanitary conditions present at the Facility. The Class member detainees are in every sense wards of the Parish. As detainees they are powerless to address the conditions complained of.

Society cannot countenance the types of living conditions documented in this case in a detention facility any more than society should countenance such conditions in a public school or hospital. The Class Counsel, with the cooperation of the Defendant and defense counsel imaginatively and successfully negotiated a resolution which yields benefits to the Class, in the form of injunctive relief, the value of which greatly exceeds the monetary settlement amount.

Accordingly, an attorney fee of 25% of the Settlement Funds is hereby awarded to Class Counsel.

18. Said fees shall be paid to Class Counsel (or their designee) on a prorated basis as and when each Settlement Payment is received for disbursement to the Class.

19. Inasmuch as the Settlement specifies monetary payments to the Class over a 12 year term, Brown Claims Management Group is hereby appointed as the Court Appointed Disbursement Agent (CADA). The CADA shall initially be paid by Defendant (from funds separate and apart from the Settlement Funds) at a rate of $75.00/hour plus actual expenses for the first year, not to exceed 193 hours, without prior Court approval for good cause shown or consent of the Settling Defendant. Thereafter, the CADA's hourly rate may be increased in an amount not to exceed any increase in the CPI. The duties of the CADA shall include: maintaining the database of class members developed by, and provided to the CADA by

Class Counsel; receiving and distributing Settlement Funds; maintaining an accounting of all Settlement Funds and expense distributions; and providing that accounting to Class Counsel and defense counsel.

20. Class Counsel moves the Court for an *Order* awarding Class Counsel reimbursement of expenses incurred for the benefit of the Class in the amount of $12,531.29. The Defendant stipulated that the requested expense reimbursement is both reasonable and related to the proceedings. Class Counsel shall submit expense records to the Court for *in camera* review within 15 days of this *Order*. The Court will rule upon Class Counsel's request for reimbursement of expenses by subsequent *Order*.

21. The evidence establishes that expenses associated with Class Notice included $857.00 in reproduction costs and $637.00 in postage costs. The evidence and stipulations of the Parties establishes that the Notice and Notice administration was performed by para-professionals engaged by Class Counsel at a reimbursement rate of $100/hour. Defendant stipulated that the Notice costs were less than the Notice costs would have been had an outside contractor been engaged to perform the same services. Furthermore, the Court finds that, given the efficacy of the Notice, the reimbursement requested is fair and reasonable. Accordingly, the Court hereby ORDERS reimbursement of Notice related costs and expenses to Class Counsel in the amount of $37,624.50 which shall be paid by the

Defendant within 15 days of this *Order* from funds separate and apart from the Settlement Funds.

22. The Settlement Agreement is to be effected, implemented, and enforced as provided in the Settlement Agreement and as further ORDERED herein, and, to the extent not inconsistent with this *Order* and *Judgment* or the Court's subsequent orders, the Settlement Agreement is hereby approved and adopted by the Court.

    a. Within 30 days, Compromising Defendant shall either discontinue residential use of the Facility or shall cause to be conducted a Toxicogenic Mold assessment of the Facility pursuant to and consistent with the standards, methods and protocols set forth by the American Industrial Hygiene Association in its standard entitled "Recognition, Evaluation and Control of Indoor Mold, AIHA 2008." (the Standard).

    b. If any Toxicogenic Mold, as defined in Paragraph 1(EE) of the Settlement Agreement, is determined to be present in the Facility, Compromising Defendant shall cause the mold to be remediated pursuant to and consistent with the standards, methods and protocols set forth by the Standard. Upon completion of remediation, Compromising Defendant shall re-test the Facility in accordance with the Standard. Compromising Defendant shall continue to re-test

the Facility every six months until three consecutive tests are negative for Toxicogenic Mold according to the Standard.

c. If Compromising Defendant does not discontinue residential use of the Facility within 30 days, Compromising Defendant shall implement a roach and rodent control program for the Facility under the direction of a Louisiana licensed pest control contractor and consistent with the guidelines set out in the United States Department of Housing and Urban Development ("HUD") Maintenance Booklet 7, "Termite, Insect and Rodent Control." The contractor employed by the Compromising Defendant shall re-inspect the Facility every six months and shall institute any necessary additional control program consistent with the HUD guidelines.

d. If Compromising Defendant does not discontinue residential use of the Facility within 30 days, Compromising Defendant shall also implement the recommendations of the licensed HVAC contractor who inspected the Facility, the report of which was entered into evidence by agreement of the Parties. All HVAC recommendations shall be implemented within 120 days of this *Judgment*.

23. Any amounts deducted from prisoner accounts or paid by any Class Member for medical expenses related to mold exposure during the Incident as defined in the Settlement Agreement shall be refunded by the

Compromising Defendant to the Class Member within 10 days of the Final Settlement Date. In accordance with the Settlement Agreement, entitlement to refund of medical expenses incurred during the Incident requires only a showing of a temporal relationship to the Incident, but Defendant shall have no obligation to refund medical expenses which are clearly unrelated to environmental exposures at the Facility. Medical expenses related to Toxigenic mold exposure and/or testing for, or related to Toxigenic Mold exposure shall be the responsibility of Compromising Defendant. As such, Class members and non-class detainees who incur medical expenses related, by their health care providers, to toxigenic/toxicogenic mold (the terms are defined identically and used interchangeably in the medical literature) will be entitled to be reimbursed for those expenses if these are incurred while a resident in the Facility and prior to a date six months following the last inspection that revealed toxigenic/toxicogenic mold at the Facility. (Settlement Agreement Paragraph II(A)3). Any dispute as to the sums due shall be resolved by the CADA, with class members assisted by Class Counsel. Either party may then appeal to this Court or, at the Court's discretion, to the Magistrate Judge with the CADA's findings reviewed based upon an abuse of discretion standard.

24. All Released Claims of the Class and the Class Members, as defined in the Settlement Agreement, are hereby released, reserving, however, the right

to enforce the Settlement made subject of this *Order and Judgment of Approval of Settlement*.

25. Given the absence of objections, this *Order and Judgment of Approval of Settlement* shall be immediately effective and appealable.

26. The Court reserves jurisdiction over the Parties to the Settlement Agreement, their counsel, the CADA, and all persons retained to implement the Settlement for all purposes necessary in the administration, supervision, construction, and enforcement of the Settlement Agreement and of this *Order and Judgment of Approval of the Settlement*.

Signed in Baton Rouge, Louisiana on <u>June 13, 2016</u>.

_____
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**